**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**HENK ORLANDO ROMMY,**
                **Plaintiff,**

**v.**                                                    **CIVIL ACTION NO. 3:17-CV-6**
                                                         **(GROH)**

**JUDITH FRIEDMAN, Senior**
**Trial Attorney, United States**
**Department of Justice; and**
**PAULA A. WOLFF,**
**International Prisoner Transfer**
**Unit, United States Department**
**of Justice,**
                **Defendants.**

## <u>REPORT AND RECOMMENDATION</u>

### I.  Introduction

On January 1, 2017, the *pro se* Plaintiff, who was then a federal prisoner incarcerated at FCI Gilmer in Glenville, West Virginia, initiated this case by filing an action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), claiming a due process violation, unspecified "discrimination", and a violation of his Eighth Amendment rights.  ECF No. 1.  Plaintiff paid the $400.00 filing fee in its entirety on February 14, 2017.  ECF No. 11.  On March 8, 2017, the Court granted Plaintiff's motion [ECF No. 12] to amend his complaint.  ECF No. 13.  On May 17, 2017, Plaintiff filed an Amended Complaint which modified the named defendants, but in the "Statement of Claim", "Injury" and "Relief" sections referred to the original complaint.  ECF No. 18 at 2, 7, 9.  This matter is pending before

the undersigned for an initial review and Report and Recommendation pursuant to LR

PL P 2 and 28 U.S.C. § 1915A.


## II.  FACTUAL AND PROCEDURAL HISTORY

### A. Underlying Criminal Conviction in the Southern District of New York case number 1:02-CR-994.

On July 25, 2002, Plaintiff was indicted in the Southern District of New York.

ECF No. 1[1].  A superseding indictment[2] was returned on November 18, 2003.  ECF No.

5.  On September 30, 2005, a jury returned a verdict of guilty as to Count 1 of the

superseding indictment.   On January 26, 2006, the Court sentenced Plaintiff to 240

months of imprisonment, followed by three years of supervised release, and ordered the

forfeiture of one million dollars ($1,000,000.00).  ECF No. 44.  On November 26, 2007,

the United States Court of Appeals for the Second Circuit affirmed the judgment of the

District Court.  ECF No. 50.

On August 31, 2010, the District Court entered a Memorandum Order which

denied Plaintiff's motion for a new trial.  ECF No. 53.  On September 8, 2010, Plaintiff

appealed the denial of his motion for a new trial.  ECF No. 54.  On July 20, 2012, the

United States Court of Appeals for the Second Circuit affirmed the judgment of the

District Court.  ECF No. 55.

---

[1]  In this section, II.A., all ECF numbers referred to are for case number 1:02-CR-994 from the Southern District of New York.

[2]  Although the charging documents are unavailable for review on PACER, in its July 20, 2012 mandate which is available for review, the United States Court of Appeals for the Second Circuit described the nature of the charges and evidence that the prosecution presented, that Rommy conspired with others to import ecstasy into the United States in three transactions: (1) an uncompleted plan to import 1,000,000 ecstasy pills; (2) discussions with an undercover DEA agent to import 300,000 ecstasy pills; and (3) a successful importation of more than 800,000 ecstasy pills.  ECF No. 55 at 2.

### B.    The Extradition Proceedings

On June 10, 2015, an Assistant United States Attorney filed a "Complaint for Arrest with a View Towards Extradition (18 U.S.C. § 3184)" in the United States District Court for the Northern District of West Virginia.  ECF No. 1[3].  The Complaint alleged that in fulfilling its obligations under the Extradition Treaty and Extradition Agreement in force between the United States and the Netherlands, the United States sought an arrest warrant for Plaintiff so that he could be extradited to the Netherlands to face pending charges[4] there.  ECF No. 1.   On the same date of the filing of the complaint, the Government filed a Request for Extradition from the District Court of Amsterdam regarding Plaintiff who was "suspected of incitement to the murder of Henie Shamel and Anne de Witte during the night of 8 May 1993 in Antwerp, Belgium."  ECF No. 4 at 2. On June 10, 2015, the presiding Magistrate Judge issued an arrest warrant for Plaintiff based upon the complaint.  ECF No. 3.

On August 14, 2015, the Court entered an Order regarding the extradition of Plaintiff.  ECF No. 14.  An Amended Order was entered on August 31, 2015.  ECF No. 16.  A Second Amended Order was entered on September 22, 2015.  ECF No. 18.  The Second Amended Order directs that:

---

[3]  In this section, II.B., all ECF numbers referred to are for case number 1:15-MC-19 from the Northern District of West Virginia.

[4]  The complaint in 1:15-MC-19 alleges that an arrest warrant was issued for Plaintiff in the Netherlands on July 4, 2013, following the murder of two people, Henie Shamel and Anne de Witte who were both shot in the head while sitting in Shamel's car in Antwerp, Belgium.  ECF No. 1 at 2, ¶¶ 4, 5. Dutch authorities identified Shamel as a drug dealer to whom Plaintiff owed a large sum of money.  Id. at 2, ¶  6.  Several informants told Dutch authorities that Plaintiff had ordered the murder of Shamel, and that de Witte was murdered because she was with Shamel at the time of his killing.  Id. at 3, ¶ 6.

The complaint further alleges that Dutch officials sought an arrest warrant for Plaintiff to finish serving 408 days of a 4 year, 6 month sentence for participation in willfully taking outside of the territory of the Netherlands a quantity of cocaine, and participation in willfully taking outside of the territory of the Netherlands a quantity of hashish and marijuana.  Id. at 3 – 4, ¶ ¶ 7, 8.

> [T]he United States Marshal for the Northern District of West Virginia shall deliver to the duly authorized representatives of the Government of the Netherlands the person of Henk Orlando Rommy for the purpose of transporting the said Henk Orlando Rommy from this District to the Territory of the Netherlands, and it is further ORDERED that, upon completion of his undischarged term of imprisonment in the custody of the United States Bureau of Prisons, or as otherwise may be agreed upon, the transfer of physical custody of the said Henk Orlando Rommy shall be at such time and place as mutually agreed upon. . .

ECF No. 18 at 1 – 2.

On September 1, 2016, the Court entered a "Certification of Extradition and Order of Commitment" which noted that Plaintiff "consented to remain in custody pending the arrival of agents from the requesting state to effect his transfer".  ECF No. 19 at 1.  Among other findings, the Court found that: Plaintiff "has stipulated that there is probable cause to believe that he committed the offenses for which extradition is sought", those being for trial for incitement to commit murder and to serve the remainder of the sentence imposed as to two drug trafficking offenses.  Id. at 2, ¶¶ 4, 6, 7.  The Court also found that "Counsel for Henk Orlando Rommy has reviewed this Order with the Assistant United States Attorney and has no objection to its entry."  Id. at 3, ¶ 8.  In the Certification, the Court again ordered that "upon completion of his undischarged term of imprisonment in the custody of the United States Bureau of Prisons, or as otherwise may be agree upon, Henk Orlando Rommy . . . . will be transferred to the custody of the requesting state . . . of the Netherlands to be transported to the Netherlands."  Id. at 3.

### C.    Other Proceedings

On February 1, 2016, Plaintiff filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241 in the Northern District of West Virginia, case number 3:16-CV-13,

wherein Plaintiff claimed he was being "denied his rights to be extr[a]dited back to [the Netherlands] to face accessory to murder charges – violating his VI amendment rights of speedy trial [and] due process."  Civil action 3:16-CV-13 was dismissed on March 1, 2016.

On February 19, 2016, Plaintiff filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241 in the Northern District of West Virginia, case number 1:16-CV-27, wherein Plaintiff which raised the same grounds as those raised in 3:16-CV-13.  Civil action 1:16-CV-27 was dismissed without prejudice on March 24, 2016, upon Rommy's motion.

### D.    The Instant Complaint in 3:17-CV-6.

Plaintiff filed the instant initial complaint on January 18, 2017 and amended complaint on May 17, 2017.  Although Plaintiff filed his initial complaint on the court-approved form, in the section entitled "Statement of Claim: Claim 1" he requests the court "SEE ATTACHED COMPLAINT", which is comprised of a ten page typed complaint and attestation.  ECF Nos. 1 at 8, 1-1.  In the "Statement of Claim: Claim 1" section of the amended complaint, Plaintiff requests the court "see; original complaint".  ECF No. 18 at 7.   Because the amended complaint appears to have been filed merely to clarify the parties, references to "the complaint" herein include both the initial complaint and the amended complaint.

The complaint alleges a single ground for relief: that on various dates from February 2008 through August 2016[5], Defendants conspired to retaliate against Plaintiff in violation of the First, Fifth, Eighth and Fourteenth Amendments, by their denial of his

---

[5]  Plaintiff specifically alleges that he submitted three applications for transfer to the Netherlands in February 2008, January 2011 and July 2016.  ECF No. 1-1 at 4, ¶ 11.

request to be extradited to his country of citizenship, the Netherlands, pursuant to the applicable extradition treaty.   ECF No. 1-1 at 3.   Plaintiff asserts that Defendants conspired to retaliate against and punish him because "Plaintiff had on numerous occas[ions] challenged and filed petition[s] against . . . the Bureau of Prisons and Department of Justice, and . . . sought redress of his grievances . . . [in] Court. . . [and] contacted members of [ ] Congress."  Id. at 3 – 4.

More specifically, Plaintiff alleges that Defendant Friedman ("Friedman") used the "Department of Justice political and judicial powers" to prolong and delay his extradition. Id. at 6.   Plaintiff claims that Friedman first provided "inadequate and incorrect information" to the Court in order to delay his extradition in August 2015.  Id.  Plaintiff further alleges that Friedman made "a second attempt to prolong and delay" his extradition by providing additional inadequate and incorrect information to the Court "suggesting that the Netherlands legal process is much different that the legal process in the United States. . . ."  Id. at 6 – 7.   Plaintiff alleges that Friedman knowingly provided incorrect information to the Court that Plaintiff had counsel, while Plaintiff insisted he did not have counsel.  Id. at 7.  Finally, Plaintiff alleged that Friedman and Defendant Wolff ("Wolff") committed perjury or arranged for the submission of perjured testimony related to his extradition.  Id.  Plaintiff asserted that he "lost his natural rest and sleep, suffered pain and emotional trauma, depression, anxiety, and apprehension. . . all to his great damage."  Id. at 8.

On May 17, 2017, the Clerk issued sealed summonses for Defendant to serve, which summonses were sent to Plaintiff via certified mail.  ECF No. 19.  On May 23, 2017, Plaintiff's notice of change of address to FCI Raybrook in Raybrook, New York

was filed.  ECF No. 20.  On May 30, 2017, the return receipt [ECF No. 19] for the summonses was filed, reflecting that the same was initially sent to Plaintiff at FCI Gilmer, but signed as received by "B. Stucky" on May 26, 2017 in Oklahoma City, Oklahoma.  ECF No. 23.  On June 16, 2017, Plaintiff's notice of change of address to FCI Victorville in Adelanto, California, was filed.  ECF No. 28.[6]

On September 5, 2017, Plaintiff filed a "Motion to Verify Service of Summons in a Civil Action".  ECF No. 31.  Therein Plaintiff asserts that he did not timely receive the Court's May 17, 2017 order [ECF No. 17] which advised Plaintiff of his responsibility to serve process upon the defendants consistent with Rule 4(m) of the Federal Rules of Civil Procedure.  ECF Id. at 1.  Plaintiff asserted in his motion that he did not timely receive the Court's Order because "Plaintiff's legal mail was initially sent to FCI Gilmore. It was then forwarded to Oklahoma Transfer Center . . . prior to him receiving the mail [ ] at FCI Victorville."  Id. at 1 – 2.  As exhibits to this motion, Plaintiff attached what purport to be executed Proofs of Service.  ECF No. 31-1 at 3, 5, 7.  The Proof of Service for Helen Altmeyer[7] was executed on July 26, 2017.  ECF No. 31-1 at 3.  The Proofs of Service for Wolff and Friedman were executed on July 12, 2017.  ECF No. 31-1 at 5, 7.

On September 11, 2017, Defendant Friedman ("Friedman") filed a motion to dismiss and accompanying memorandum of law in support thereof.  ECF Nos. 32, 33. On that same date, Defendant Wolff ("Wolff") filed a motion to dismiss and accompanying memorandum of law in support thereof.  ECF Nos. 34, 35.  The Court issued a Roseboro notice on September 12, 2017.  ECF No. 36.  On October 6, 2017,

---

[6]  The Court notes that this change of address form was filed by Plaintiff three times: twice on June 15, 2017 [ECF Nos. 28, 29] and a third time on July 3, 2017 [ECF No. 30].

[7]  Helen Altmeyer is an Assistant United States Attorney in the Northern District of West Virginia.

Plaintiff requested and on October 10, 2017, was granted an extension of time to respond to the motions to dismiss.  ECF Nos. 39, 40.  On November 3, 2017, Plaintiff filed his response.  ECF No. 42.  On November 13, 2017, Defendants filed their reply. ECF No. 43.

### III. Standard of Review

### A.    Pro Se Litigants

Because Petitioner is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious.  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

Courts must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[8] is designed largely to discourage the filing of, and waste of judicial and private resources upon,

---

[8] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."  As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

> baseless lawsuits that paying litigants generally do not
> initiate because of the costs of bringing suit and because of
> the threat of sanctions for bringing vexatious suits
> under Federal Rule of Civil Procedure 11. To this end, the
> statute accords judges not only the authority to dismiss a
> claim based on an indisputably meritless legal theory, but
> also the unusual power to pierce the veil of the complaint's
> factual allegations and dismiss those claims whose factual
> contentions are clearly baseless. Examples of the former
> class are claims against which it is clear that the defendants
> are immune from suit. . .

490 U.S. at 327.

## B. Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding pro se and therefore the Court must liberally construe her pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).  Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough

to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570.   In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.   Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation.  Id. at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

## IV. Analysis

### A.   Plaintiff Failed to Serve Process Pursuant to the Federal Rules of Civil Procedure

Defendants are attorneys with the United States Department of Justice.   ECF Nos. 18 at 2, 33-1 at 2, 35-1 at 2.   Accordingly, Plaintiff was required to serve Defendants pursuant to Federal Rule of Civil Procedure 4(i)(3) which provides:

> ***Officer or Employee Sued Individually.*** To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Federal Rule of Civil Procedure 4(f) concerns service of individuals in a foreign country.  Friedman is a resident of the District of Columbia.  ECF No. 33-1 at 2.  Wolff is a resident of Maryland.  ECF No. 35-1 at 2.  Accordingly, Rule 4(f) is inapplicable to either Defendant.  Federal Rule of Civil Procedure 4(g) concerns service of a minor or incompetent person, and is thus inapplicable to either Defendant.  Accordingly, pursuant to the strictures of Rule 4(i), Plaintiff was only required to comply with the requirements of Rule 4(e) to effectuate service on Defendants.

To effectuate service under Federal Rule of Civil Procedure 4(e), Plaintiff could have served Defendants by:

> **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> **(2)** doing any of the following:
> > **(A)** delivering a copy of the summons and of the complaint to the individual personally;

> **(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> **(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Service was attempted upon Friedman by personal service of the summons upon a "Demetrius Gattling" at the U.S. Department of Justice.  ECF No. 31-1 at 7.  Friedman declared that she did not authorize Demetrius Gatling[9] or anyone in the mailroom to accept service on her behalf.  ECF No. 33-1 at 2.  Friedman declared that she received a copy of the summons and complaint by regular mail through workplace mail.  Id. Service was attempted upon Wolff by personal service of the summons upon Demetrius Gattling at the U.S. Department of Justice.  ECF No. 31-1 at 5.  Wolff declared that she has not been served with the summons or complaint.  ECF No. 35-1 at 2.  Wolff further declared that she did not authorize anyone to accept service of process on her behalf, including Gattling.  Id. at 3.

According to the declarations of both Defendants [ECF Nos. 33-1, 35-1] and the Proofs of Service submitted by Plaintiff [ECF No. 31-1 at 5, 7], neither Defendant was personally served with the summons and complaint, as required by Fed. R. Civ. P. 4(e)(2)(A).  Nor was a copy of the summons and complaint left at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, as required by Fed. R. Civ. P. 4(e)(2)(B).  In his attempt to serve Defendants, Plaintiff evidently delivered a copy of each document to a person who purports to work in the Department of Justice, however, Mr. Gattling was not authorized

---

[9]  The Court notes that Friedman's Declaration [ECF No. 33-1] contains a variation of the spelling of "Demetrius Gatling" but that elsewhere [ECF Nos. 31-1 at 5, 7, 35-1 at 3] the name is spelled "Demetrius Gattling".

by either Defendant to accept service on their behalf, as required by Fed. R. Civ. P. 4(e)(2)(C).  Accordingly, because Plaintiff failed to serve process upon either Defendant as required by the Rules of Civil Procedure, the undersigned recommends that Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) be granted, and this action should be dismissed without prejudice for such failure to effectuate service.

**B.     Lack of Personal Jurisdiction**

Plaintiff has failed to establish personal jurisdiction over either Defendant.  The Fourth Circuit held in <u>Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan</u>, 259 F.3d 209, 215 (4th Cir. 2001), that:

> It is axiomatic that, in order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements.

The West Virginia long-arm statute, codified at W.Va. Code §56-3-33, provides in part that:

> (a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the Secretary of State, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a

13

signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;

(2) Contracting to supply services or things in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state: *Provided,* That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Having an interest in, using or possessing real property in this state; or

(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her.

Regarding personal jurisdiction, the Fourth Circuit has determined that, "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, . . . it is unnecessary. . . to go through the normal two-step formula for determining the existence of personal jurisdiction. . . Rather the statutory inquiry

necessarily merges with the Constitutional inquiry." In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997) (internal citations omitted).

In International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), the Supreme Court established that:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

(citations omitted).  To establish the minimum contacts necessary to confer personal jurisdiction, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  Such minimum contacts necessary to establish jurisdiction must be "purposeful". Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985), see also In re Celotex, supra, 124 F.3d at 628.  "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State." Burger King Corp., supra, 471 U.S. at 475 (emphasis in original).  "[W]here the defendant "deliberately" has engaged in significant activities within a State, . . . or has created "continuing obligations" between himself and residents of the forum, . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him

to submit to the burdens of litigation in that forum as well.  Id. at 476 (internal citations omitted).

In his complaint, Plaintiff concedes that Defendants are employees of the U.S. Department of Justice in Washington, D.C.  ECF No. 1-1 at 2.  Plaintiff alleges that on various dates between February 2008 through August 2016 Defendants conspired to punish him by denying his right to pursue extradition to the Netherlands pursuant to an extradition treaty[10] ("Extradition Treaty").  Id. at 3.  However, Plaintiff has failed to assert any contact by Defendants with the State of West Virginia[11], much less the minimum contact necessary to satisfy the Due Process Clause.  Thus, the Court cannot exercise personal jurisdiction over these individuals as any action that took place appears not to have occurred anywhere in West Virginia, and there is no indication that these defendants had any contact with the State of West Virginia.   Accordingly, the undersigned recommends that Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) be granted and that this action be dismissed for lack of personal jurisdiction over the Defendants.

### C.    Some of Plaintiff's Claims are Time Barred by the Applicable Statute of Limitations

Plaintiff claims that his three applications for transfer to the Netherlands were denied in retaliation for other administrative complaints and litigation which he initiated.

---

[10]    The Extradition Treaty between the United States of America and the Kingdom of the Netherlands, T.I.A.S. No. 10733, 35 U.S.T. 1334, was signed at The Hague on June 24, 1980, effective September 15, 1983, as amended by the Extradition Agreement with the European Union, S. Treaty Doc. No. 109-14, signed at The Hague on September 29, 2004.

[11]    Defendants assert that their only "contacts" with West Virginia consisted of telephone calls with Assistant United States Attorneys who work in the Northern District of West Virginia [ECF Nos. 33 at 11] and sending mail to West Virginia [ECF No. 35 at 7] where Plaintiff was incarcerated.

ECF No. 1-1 at 3.  Regardless of the veracity of those claims, two of the claims, from February 2008 and January 2011, are time barred pursuant to the applicable statute of limitations.

Wolff correctly argues that, "State law supplies the statute of limitations applicable to Bivens actions."  Noll v. Getty, 995 F.2d 1063, 1993 WL 211619 at *2, n. 2 (4th Cir. 1993) citing Kreines v. United States, 959 F.2d 834, 836 (9th Cir. 1992).  See also O'Neil v. Anderson, 372 Fed. Appx. 400, 2010 WL 1180772 (4th Cir., 2010).

West Virginia Code § 55-2-12[12] provides that the statute of limitations for personal actions with an unspecified limitation is two years from the date of accrual. District of Columbia Code § 12-301[13] provides that the statute of limitations for actions with an unspecified limitation is three years from the date of accrual.

Plaintiff claims that in February 2008, and January 2011 [ECF No. 1-1 at 4], Defendants committed various acts which are properly addressed in this Bivens action. However, such actions taken in 2008 and 2011, whether they were alleged to have occurred in either the District of Columbia or the State of West Virginia, are clearly

---

[12]  West Virginia Code § 55-2-12 provides in its entirety:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

[13]  District of Columbia Code § 12-301 provides in pertinent part:

Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:
. . .
(8) for which a limitation is not otherwise specially prescribed -- 3 years[.]

outside the three-year District of Columbia or two-year West Virginia statute of limitations period. Accordingly, the undersigned recommends that any claims which are alleged to have occurred in the District of Columbia more than three years prior to the filing of this action be dismissed with prejudice as barred by the applicable statutes of limitations, including but not limited to Plaintiff's claims about his February 2008 and January 2011 applications for treaty transfer. The undersigned recommends that any claims which are alleged to have occurred in West Virginia more than two years prior to the filing of this action be dismissed with prejudice as barred by the applicable statutes of limitations, including but not limited to Plaintiff's claims about his February 2008 and January 2011 applications for treaty transfer.

**D.   Failure to State a Claim Upon Which Relief May be Granted**

**1.   Plaintiff has failed to establish that any of his Constitutional rights were violated, as is required in a <u>Bivens</u> action.**

In <u>Ziglar v. Abbasi</u>, __ U.S. __, 137 S. Ct. 1843, 1854 (2017), the Supreme Court discussed the history of 42 U.S.C. § 1983, the initial version of which was passed by Congress in 1871, and the 1971 decision in <u>Bivens</u> which recognized the analogous cause of action against federal officials who violate the Constitutional rights of plaintiffs. "The Court held [in <u>Bivens</u>] that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." <u>Id.</u>, <u>citing</u> <u>Bivens</u>, <u>supra</u>, 403 U.S. at 397. Pursuant to <u>Bivens</u>, a federal agent may be found liable for actions "in excess of the authority delegated to him." 403 U.S. at 397.

"The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."   Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001).   The Supreme Court further explained in Malesko:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual.

534 U.S. at 72.

### a. Plaintiff is unable to argue that his Sixth Amendment Rights were violated in regard to his extradition proceedings.

The Circuit Courts which have addressed the issue, agree that "the Sixth Amendment does not apply to extradition."   DeSilva v. DiLeonardi, 181 F.3d 865, 868 (7th Cir. 1999) (citing Neely v. Henkel, 180 U.S. 109, 122 (1901) ("Allusion is here made to the provisions of the Federal Constitution relating to the writ of habeas corpus, bills of attainder, *ex post facto* laws, trial by jury for crimes, and generally to the fundamental guaranties of life, liberty, and property embodied in that instrument. The answer to this suggestion is that those provisions have no relation to crimes committed without the jurisdiction of the United States against the laws of a foreign country.")) See Sabatier v. Dabrowski, 586 F.2d 866, 869 (1st Cir. 1978) (Court rejected the argument that the Sixth Amendment applies to extradition proceedings, argument "that goes against the weight of authority and ignores the modest function of an extradition hearing."); Jhirad v. Ferrandina, 536 F.2d 478, 485 n. 9 (2d Cir. 1976) ("We note. . . that the Sixth Amendment's guarantee to a speedy trial, limited by its terms to criminal prosecutions,

is inapplicable to international extradition proceedings.").    The Eleventh Circuit has

explained more fully:

> The United States' actions in reviewing a request for extradition are, of course, subject to the constraints of the Constitution. The constitutional rights of individuals, including the right to due process, are superior to the government's treaty obligations.    Constitutional procedural protections which by their terms are applicable only in criminal cases, however, are unavailable in extradition proceedings. Accordingly, there is no Sixth Amendment right to a speedy trial in extradition cases.

Martin v. Warden, Atlanta Pen, 993 F.2d 824, 829 (11th Cir. 1993).

Because the provisions of the Sixth Amendment do not apply to extradition,

which is the context in which Plaintiff asserts his Sixth Amendment rights were violated,

he is unable to state a claim upon which relief may be granted.    Accordingly, the

undersigned recommends that all Sixth Amendment claims asserted by Plaintiff be

dismissed with prejudice.

### 2.    Failure to Allege Facts Against Defendants Which Would Support a Claim Upon Which Relief May Be Granted

In a Bivens case, the Plaintiff must specify the acts taken by each defendant

which violate his Constitutional rights.  Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994);

See Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988) ("section 1983

claims[14] [have] the additional pleading requirement that the 'complaint contain a

modicum of factual specificity identifying the particular conduct of defendants that is

alleged to have harmed the plaintiffs'").

---

[14]    The Court notes that Bivens actions and § 1983 actions are both civil rights actions, and that Bivens actions regarding deprivation of civil rights are the federal counterpart to state actions authorized by 42 U.S.C. § 1983.

Because a <u>Bivens</u> cause of action may only be brought against an individual actor who is a federal employee or agent, and specific allegations must be brought against each named actor, Plaintiff is required to name the individual federal employee actors and their specific actions which he believes caused him harm.  Plaintiff has named two individual federal actors he believes have caused him harm, however, the actions which he alleges the Defendants committed do not state a claim upon which relief may be granted.

### a.    No Constitutional violation was committed by Wolff

Plaintiff claims that Wolff violated his Constitutional rights by denying his request to be extradited pursuant to the Extradition Treaty.[15]  ECF No. 1-1 at 5.  Plaintiff filed his "Affidavit of Consent to Extradition" on August 12, 2015.  N.D.W.Va. 1:15-MC-19, ECF No. 13.   Within that document, Plaintiff conceded that, "I give this consent voluntarily, knowingly, and entirely of my own free will.  No representative, official, or officer of the United States or of the Government of the Netherlands, nor any other person has made any promise or offered any other form of inducement nor made any threat or exercised any form of intimidation against me."  <u>Id.</u>

In addition to the lack of any agreement to immediately extradite Plaintiff to the Netherlands, Plaintiff is not entitled to speedy transfer or extradition.  "Even if a treaty states that "the person whose extradition is sought shall have the right to use all remedies and recourses provided by [the law of the Requested State]," as does the treaty between the United States and Canada, the defendant does not have a right to a

---

[15]    The Court recognizes that Plaintiff also alleged that his First, Fifth, Eighth and Fourteenth Amendment rights were violated by Defendants, however, he provides no facts to support those contentions, other than listing the Constitutional amendments which he alleges were violated.  ECF No. 1-1 at 3.

speedy extradition." Martin v. Warden, Atlanta Pen, 993 F.2d 824, 829 (11th Cir. 1993) (citing In re Extradition of Kraiselburd, 786 F.2d 1395, 1398 (9th Cir.), *cert. denied,* 479 U.S. 990, 107 S.Ct. 586, 93 L.Ed.2d 588 (1986); see also Kamrin v. United States, 725 F.2d 1225, 1227-28 (9th Cir.), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984)).   Further, due process rights, though present, are limited in extradition proceedings.   "[A]n alien within the United States' plenary and exclusive jurisdiction enjoys Fifth Amendment protections, '[e]ven one whose presence in this country is unlawful, involuntary, or transitory ...' " Atuar v. United States, 156 F. App'x 555, 561 (4th Cir. 2005) (citing Mathews v. Diaz, 426 U.S. at 77, 96 S.Ct. 1883).

> Generally, so long as the United States has not breached a specific promise to an accused regarding his or her extradition, and bases its extradition decisions on diplomatic considerations without regard to such constitutionally impermissible factors as race, color, sex, national origin, religion, or political beliefs, and in accordance with such other exceptional constitutional limitations as may exist because of particularly [a]trocious procedures or punishments employed by the foreign jurisdiction, those decisions will not be disturbed.

Matter of Burt, 737 F.2d 1477, 1487 (7th Cir. 1984) (internal citations omitted).

Plaintiff does not assert that any explicit promise or agreement term was breached by the United States, or Wolff in regard to his extradition.  Although Plaintiff alleges that his Fifth Amendment rights were violated by Wolff, he fails to assert any facts to support his claim.  No promises were made to Plaintiff, as he acknowledged in his Consent to Extradition, and accordingly, it was impossible for the United States or Wolff to violate such promises.

Plaintiff does not have a right to speedy extradition, and no agreement was breached by Wolff in regard to Plaintiff's extradition.  Thus, the assertion against Wolff

does not rise to a violation of Plaintiff's Constitutional rights. Accordingly, the undersigned recommends that all claims asserted by Plaintiff against Wolff be dismissed with prejudice.

### b.    No Constitutional violation was committed by Friedman

Plaintiff makes only one specific allegation of how Friedman violated his due process rights. Plaintiff alleges that Friedman provided "inaccurate or incorrect information" to the court on two occasions, but only specifies what that incorrect information is for one of those occasions.

Plaintiff alleges that around August 2015 Friedman provided inadequate or incorrect information to the Court, but does not specify what information Friedman provided, nor does he allege how or why that information was inadequate or incorrect. ECF No. 1-1 at 6. In this regard, Plaintiff's complaint insufficiently describes the specific actions which he believes caused him harm.

Plaintiff more specifically alleges that Friedman, in a second, undated representation to the Court, provided inadequate or incorrect information to the Court regarding the legal process in the Netherlands, and that criminal cases in the Netherlands are "more like a civil discovery process where witness[es] can be interviewed and deposition[s] taken without the presen[ce] of Plaintiff. . . and that Plaintiff has Counsel appointed to represent him." Id. at 6 – 7. Although Plaintiff does not allege a time frame when this second representation to the Court occurred, the description of such a "second" representation, suggests on its face that the representation took place after the first representation, which according to Plaintiff

occurred in August 2015.   Moreover, Plaintiff does not describe how, even if these allegations were true, that his claims would rise to the level of a Constitutional violation.

As to Plaintiff's claims that Friedman misrepresented that Dutch and American legal procedures differ, such a representation appears self-evident.   As to Plaintiff's claim that Friedman inaccurately represented he had counsel, one of the documents Plaintiff filed with his complaint is a letter from him to Wolff, dated January 12, 2014, which document lists a carbon copy recipient as "Mark Teurlings, Attorney At Law". ECF No. 1-2 at 5.   Mark Teurlings is a lawyer whose office is located in Amsterdam and who practices international law.   www.teurlingsellens.nl.   It appears that according to the documents Plaintiff himself has filed with this court, that Mark Teurlings was Plaintiff's counsel as early as January 12, 2014, before even the first of the alleged misrepresentations to the Court occurred.   Plaintiff claims that Friedman misrepresented that he had counsel when he did not, however, Plaintiff's filings herein appear to demonstrate that he did have counsel in the Netherlands, consistent with any such representations by Friedman.

Plaintiff broadly alleges that Friedman has used "the Department of Justice political and judicial powers biasely [sic] to prolong and stagnate" his extradition.   ECF No. 1-1 at 6.   However, as discussed in section D.2.a. above, there is no Constitutional or statutory right to a speedy extradition.   Martin v. Warden, Atlanta Pen, supra.   Plaintiff does not allege any specific acts of Friedman that he claims violate his rights in this regard.   Moreover,  Friedman has declared that she has "no decision-making authority regarding the International Prisoner Transfer Program, which is administered by the Department of Justice's Office of Enforcement Operations."   ECF No. 33-1 at 3.

Plaintiff also broadly asserts that Friedman and Wolff, "provided reckless and/or deliberate[ly] misleading information to the District Court. . . by committing perjury and/or arranging for the submission of perjured testimony" in the Northern District of West Virginia.  ECF No. 1-1 at 7.  However, neither Friedman nor Wolff appeared in court West Virginia to provide any testimony.  ECF Nos. 33-1 at 2; 35-1 at 2.  Moreover, a review of the docket sheet for the extradition proceedings in the Northern District of West Virginia [1:15-MC-19] demonstrates that no hearings contained testimony by any witness.

Even a liberal reading of Plaintiff's complaint does not support Plaintiff's claims. It appears beyond doubt that Plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  Accordingly, for all these reasons, the undersigned recommends that Plaintiff fails to state a claim upon which relief can be granted against and that all claims asserted by Plaintiff against Friedman be dismissed with prejudice.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that Defendants' Motions to Dismiss [ECF Nos. 32, 34] be **GRANTED** and Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.  It is further recommended that Plaintiff's motion to verify service of summons in a civil action [ECF No. 31] be **DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to

the Honorable Gina M. Groh, Chief United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985); Wells v. Shriners Hosp., 109 F.3d 198 (4th Cir 1997).

This Report and Recommendation completes the referral from the District Court. The Clerk is directed to terminate the Magistrate Judge association with this case.

The Clerk of the Court is directed to send a copy of this Order to the Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record via electronic means.

DATED:        January 31, 2018

/S/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE